IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

VICTORIA TURMAN AND
TOMMY TURMAN                                                                PLAINTIFFS

V.                                                        CIVIL ACTION NO. 3:06CV125-B-A

COLONIAL LIFE & ACCIDENT
INSURANCE COMPANY                                                           DEFENDANT

**MEMORANDUM OPINION**

This cause comes before the court upon the parties' motions for summary judgment. Upon due consideration of the motions, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

This suit arises from the defendant Colonial Life & Accident Insurance Company's denial of the plaintiffs' claim for catastrophic accident insurance benefits pursuant to an ERISA-governed employee welfare benefit plan established and maintained by Southern Quality Meats, Inc., plaintiff Tommy Turman's employer. Plaintiff Victoria Turman was enrolled as a beneficiary on her husband's plan. On February 16, 2003, Victoria was involved in a serious automobile accident and suffered various injuries including fractures in her arms and legs and head trauma. She lost mobility in her left arm and left leg for a period of time and was treated for this condition by Dr. Louis Rosa.

Ms. Turman was eligible to receive certain benefits under the plan and was paid a total of $32,500.00 between February 2003 and August 2004. In addition to individually enumerated benefits, the plan contained a catastrophic accident provision outlined as follows:

> We will pay the applicable amount listed below at the end of the
> elimination period if any covered person:
> - sustains a catastrophic loss as the result of a covered accident;
> - is under the appropriate care of a doctor during the elimination period; and
> - remains alive at the end of the elimination period.
>
> *Elimination period* means the period of 365 days after the date of a covered accident.
>
> *Catastrophic Loss* means an injury that within 365 days of the covered accident results in total and irrecoverable:
> - loss of both hands or both feet; or
> - loss or loss of use of both arms or both legs; or
> - loss of one hand and one foot; or
> - loss or loss of use of one arm and one leg; or
> - loss of the sight of both eyes; or
> - loss of the hearing of both ears; or
> - loss of the ability to speak.
>
> The *loss of use of an arm* means the loss of function of the entire arm from the shoulder to the hand. The *loss of use of a leg* means the loss of function of the entire leg from the hip to the foot.

The plan also outlines the requirements for proof of loss for a catastrophic accident, stating:

> You must give us written proof of loss within 90 days after the Catastrophic Accident elimination period ends. Written proof of loss for the Catastrophic Accident, provided at your expense and in English or Spanish, includes the following:
>
> - an attending doctor's statement verifying the extent of injury; and
> - a completed Catastrophic Accident Claim Form.

In late March 2004, the plaintiffs sent to Colonial a "Catastrophic Accident Claim Form" containing an attending physician's statement completed by Dr. Rosa. The form asked the physician to check all statements that described Ms. Turman's condition. Dr. Rosa checked that Victoria Turman had "sustained a total and irrecoverable . . . loss of use of one arm and one

2

leg...." but also checked "yes" to the following question: "Has the insured regained partial or complete use of any of the above since the date of the accident?" Dr. Rosa indicated that this improvement occurred in December 2003.

On January 29, 2004, Dr. Rosa stated in an office note which was submitted to Colonial by the plaintiffs, "[O]n examination she walks and she is doing well." Subsequently, Colonial requested that Ms. Turman ask her doctor to provide "clarifying medical documentation for further review." Accordingly, on July 22, 2004, Dr. Rosa faxed a letter to Colonial stating, in relevant part, "At this time the injuries to her left arm and left leg have not recovered 100% from the accident."

Colonial wrote Mr. Turman on March 22, 2005, to inform him that it was denying Victoria Turman's claim. The Turmans subsequently hired an attorney and demanded $80,000.00 in settlement on November 1, 2005. The settlement demand was rejected, and the plaintiffs filed the present action in the Circuit Court of Pontotoc County, Mississippi, on August 25, 2006. The defendant subsequently removed to this court on grounds of ERISA preemption.

Standards of Review

*ERISA Standard*

ERISA authorizes the court's review of Colonial's denial of Ms. Turman's claim. *See* 29 U.S.C. § 1132(a)(1)(B); *see also Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 332 (5th Cir. 2001). "[J]udicial review of the administrator's determination of plan terms and eligibility for benefits provisions [is] to be *de novo* unless the plan expressly conferred upon the plan administrator discretionary authority in making such determinations. If discretion were

3

granted, the 'abuse of discretion' standard would apply instead." *Vercher v. Alexander & Alexander*, 379 F.3d 222, 223 (5th Cir. 2004).

In the case at bar, the policy agreement gives Colonial discretionary authority "to determine the covered person's eligibility for the benefits and to interpret the terms and provisions of the policy"; thus, an abuse of discretion standard applies. The administrator's factual determinations are reviewed for abuse of discretion even where the plan does not expressly provide the administrator with discretionary authority. *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*, 493 F.3d 533, 540 (5th Cir. 2007); *Vercher*, 379 F.3d at 223. In assessing abuse of discretion, the court must "focus on whether the record adequately supports the administrator's decision." *Wade*, 493 F.3d at 541 (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 298 (5th Cir. 1999) (en banc)). Evidence outside of the administrative record is not to be considered. *Gooden*, 250 F.3d at 333. "[T]he administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000). "To avoid reversal in the summary judgment context, the administrator's decision must be supported by substantial evidence in the administrative record, which is evidence that a reasonable mind might accept as sufficient to support a conclusion." *Wade*, 493 F.3d at 541. Where the plan administrator is also the insurer, the reviewing court grants the insurer/administrator's decision less than full deference under the abuse of discretion standard, applying a "sliding scale standard." *Gooden*, 250 F.3d at 333. Such is the case here; thus, the court is mindful that Colonial's decision does not receive full deference.

4

*Summary Judgment Standard*

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274 (quoting Fed. R. Civ. P. 56(c), 56(e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

<u>Analysis</u>

The plaintiffs contend that Victoria Turman is entitled to receive catastrophic accident benefits under the plan because "[a]s Dr. Rosa's personal letters to Colonial explains, during the elimination period, Turman had lost all use of her left arm and left leg . . . ." The plaintiffs further assert that Dr. Rosa's letters refer "to the time immediately following the elimination period where he clearly states that Turman had lost the use of [her] left arm and left leg for a year following the accident" and that "[t]his entitles Turman to the benefits under the catastrophic accident provision."

5

The court has examined each of Dr. Rosa's letters, but nowhere has the court found any proof that Ms. Turman "sustained a total and irrecoverable . . . loss of use of one arm and one leg" during the elimination period and afterwards. To the contrary, the record reflects that Ms. Turman had regained "partial or complete use" of the subject arm and leg by December 2003, approximately two months before the end of the elimination period. According to Dr. Rosa, on January 29, 2004 – still prior to the end of the elimination period – Ms. Turman was walking and "doing well." In July 2004, Dr. Rosa stated, "At this time the injuries to her left arm and left leg have not recovered 100% from the accident." None of the foregoing statements describe an "irrecoverable" loss.

The policy language relevant to this case is clear and unambiguous. The catastrophic injury must be "total and irrecoverable." While Ms. Turman may have suffered "total" loss of use of the subject arm and leg during a portion of the elimination period and while at some point the loss may have *appeared* to be "irrecoverable," the fact remains that it was not irrecoverable – and that fact was revealed prior to the end of the elimination period.

The parties are in general agreement as to the standards of review applicable to this case. They disagree, however, as to whether the court should consider two letters which were not part of the administrative record. The defendant argues that "the plan administrator, Colonial, did not have a fair opportunity to consider the information contained in these letters, prior to making its decision." As the court noted above, "the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000). The court is persuaded by the

defendant's argument but nevertheless finds that consideration of the letters would not alter the outcome of this case. The issue is thus ultimately rendered moot. The first letter, dated June 12, 2003, contains illegible portions, but the legible content makes clear that this letter offers no proof which would contradict the defendant's position in this case. The second letter is dated March 13, 2007 – several months after this litigation began. In this letter Dr. Rosa states in relevant part, "As a result of the accident, Mrs. turman [sic] had subsequently lost total use of her left arm and left leg. She has regained some use of her left arm and leg. She does walk with a slight limp." No dates regarding the time period for which Ms. Turman "lost total use of her left arm and left leg" are set forth in the letter. The letter is, therefore, consistent with Dr. Rosa's previous statements in which he makes clear that Ms. Turman's loss was shown to be "recoverable" prior to the end of the elimination period.

The plaintiffs argue that Colonial abused its discretion when it failed to determine Ms. Turman's catastrophic benefits claim on the expiration date of her elimination period. The plaintiffs, however, did not submit the claim until at least a month after the expiration date. While the court notes that this action was well within the plaintiffs' rights pursuant to the policy agreement, as the agreement allowed the plaintiffs ninety days beyond the end of the elimination period to submit a claim, the plaintiffs can hardly argue that Colonial abused its discretion in evaluating the claim at a later date. The plaintiffs argue that "[u]nder the policy, Colonial was required to evaluate Turman's claim 365 days following the accident." The court finds no such provision in the policy. Certainly Colonial was required to make its determination based on an evaluation of Ms. Turman's condition at the end of the elimination period – as opposed to her condition months later, but it was not required to make the determination precisely 365 days

7

following the accident. It is clear that Colonial properly evaluated Ms. Turman's claim in accordance with the plain meaning of the plan's language. Ms. Turman's condition had improved at least as early as December 2003 – clearly within the elimination period – and this fact is well documented in Dr. Rosa's correspondence. If Ms. Turman's loss had been shown to be total and irrecoverable on the expiration date of the elimination period and if Colonial had waited several months beyond that date before making its decision in order to allow for improvement and thus grounds for denial of benefits, then the plaintiffs' argument would be meritorious. Any improvement after the expiration of the elimination period could not be considered. Such is not the situation presented in this case, however, and the plaintiffs' argument must fail.

It is clear that Colonial's decision to deny catastrophic loss benefits to Ms. Turman is supported by substantial evidence in the administrative record (as well as evidence which was not part of the administrative record). Further, the decision was made in accordance with a correct interpretation of plain and unambiguous policy language. For these reasons, the court finds no abuse of discretion on the part of the plan administrator, and Colonial's decision must be upheld.

## Conclusion

The court has examined the record in the light most favorable to the plaintiffs, and it is obvious that Ms. Turman's injuries do not fall under the catastrophic loss provision of the subject policy. The plan administrator – i.e., the defendant – did not abuse its discretion in denying benefits under this provision. Accordingly, the court finds that the plaintiffs' motion for

summary judgment should be denied and that the defendant's motion for summary judgment should be granted. A separate order in accord with this opinion shall issue this day.

This, the 7th day of February, 2008.

/s/ Neal Biggers
_____
**NEAL B. BIGGERS, JR.
SENIOR U.S. DISTRICT JUDGE**